Jones, J.
On February 11, 1913, the city council of Cincinnati passed an ordinance, reciting that in its opinion the necessity and importance of the extension of a street railway along Reading road in that city warranted the grant of permission therefor, without the consent of the abutting property *474 owners. Accordingly, under such ordinance, the grant of permission to The Cincinnati Traction Company and The Cincinnati Street Railway Company to extend a railway along said Reading road was made without the production to council of the written consents of the owners of more than one-half of the feet front of the lots and lands abutting on said street.
Plaintiffs in error, as owners of property abutting on said Reading road, brought an action to enjoin the construction of such street railroad, and prayed that the ordinance granting such permission be declared null and void.
The sole question to be determined is whether Section 9105, General Code, is a valid enactment under the present constitution of the state.
The superior court held that the section in question was valid, but the court of appeals held the same to be unconstitutional because it was a delegation of legislative power and therefore in contravention of Section 1 of Article II of the state Constitution.
The power of the council of a municipality to make the grant was authorized by Section 3777, General Code. That power, however, is limited by Section 9105, General Code, which provides as follows:
“No such grant shall be made until there is produced to council, or the commissioners, as the case may be, the written consent of the owners of more than one-half of the feet front of the lots and lands abutting on the street or public way, along which *475 it is proposed to construct such railway or extension thereof,” etc.
For a half century this and substantially similar sections have found an abiding place in the statutes of Ohio. The claim of the court of appeals is that while these sections have been on numerous occasions before -the supreme court of this state, in each case the constitutionality of the section has been assumed by that court rather than decided, and that it still remains an open question whether these consent statutes are repugnant to that section of the state constitution which prohibits the delegation of legislative power.
We are unable to conceive any delegation of legislative power in this section which- requires the consent of abutting lotowncrs as a prerequisite to municipal action. The abutting lot owner has no potential power in the making of the law. The withholding of his consent is merely a quiescent action upon his part, and in-nowise controls municipal discretion. Section 9105, General Code, supra, is not to be considered as any delegation of legislative power, but rather a limitation upon the power of council which is a prerequisite to its action. Municipal councils have only such powers as are delegated to them by the state, and these powers can be exercised only upon the conditions named by the legislative power. The council has no power to act, under this limitation, until the prerequisite consents are filed. The same sovereign authority that has given to municipalities control of the streets, the power to make occupative grants thereon and 'transferred the title to its highways *476 in trust for public use, has like power to impose conditions and limitations under which such control, grants and the occupancy of its streets and highways may be exercised.
In this class of cases the state has expressly provided that these grants for the occupancy of its highways and streets shall not be made until the written consent of the owners of more than one-half of the feet front of the lots and lands abutting on the street or public highway should be produced.
Under the limitation thus imposed upon it by the state, the council has no power to act until the prerequisite condition has been fulfilled. It is, therefore, in no sense a delegation of legislative power, but a lack of power upon the part of the council to act until the fulfillment of that condition. Roberts v. Easton et al., 19 Ohio St., 78; The Mt. Auburn Cable Ry. Co. v. Neare et al., 54 Ohio St., 153.
We recognize the fact that this court has decided that in this class of cases these consents are not property rights, but rights personal to each owner of the abutting lot, and that as such they need not be appropriated. However, the legislature in its wisdom had- adopted the policy of providing that these consents must be secured. As stated by Judge Day in the case of Roberts v. Easton et al., supra, the evident object of these consent statutes was to protect the owners of property from the arbitrary use of the streets on the part of the municipal authorities. The wisdom of this policy lies in the discretion of the legislature, and we are not authorized to disturb it; but by adopting and making it a condition precedent to municipal action *477 by one of its agencies, the state imposed that limitation upon the power of its municipal agency as a prerequisite to its exercise.
The foregoing constitutional feature was the only one urged in argument and decided by the lower courts, although it was suggested by counsel for defendant in error that the section might be repugnant to Section 26 of Article II of the Ohio Constitution, which provided that no act should take effect “upon the approval of any other authority than the general assembly.” But very little stress is laid upon the,application of that section of the constitution, and it is difficult to see how it could apply to these consent statutes, for the reason that if the council had the power to pass the law the same would take effect irrespective of the approval of any other authority. No other constitutional question was made in the case.
At the present term of this court, in the case of Billings et al. v. The Cleveland Ry. Co., post, 478, the maj’ority of this court held this statute unconstitutional under the recent home-rule amendment, for the reason that in that case the city of Cleveland had adopted a charter covering this feature and thus nullified the act; but as the city of Cincinnati had no such charter, and as the home-rule amendment is not self-executing (The State, ex rel. City of Toledo, v. Lynch, Auditor, 88 Ohio St., 71), the Cleveland case has no application to the case at bar. Cincinnati has adopted no charter; nor have additional laws been passed touching this feature, within the purview of Section 2, Article XVIII of the Constitution.
*478 The court of appeals erred in holding Section 9105, General Code, unconstitutional, and its judgment is reversed and that of the superior court of Cincinnati is affirmed.
Judgment of the court of appeals reversed, and that of superior court of Cincinnati affirmed.
Nichols, C. J., Johnson and Newman, JJ., concur.
Donahue and Wanamaker, JJ., dissent.